UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
:
**MICHAEL BLOOMFIELD**, :
:
                     Plaintiff, :
: **MEMORANDUM DECISION AND**
      – against – : **ORDER**
:
: 23-CV-5090 (AMD) (JMW)
**ALVEST (USA), INC., SAGE PARTS PLUS,** :
**INC.,** *doing business as Sage Parts*, **ALVEST** :
**HOLDING SAS, JEAN-MARIE FULCONIS,** :
and **ANTOINE MAGUIN**, :
:
                     Defendants. :
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The plaintiff brings this action against his former employers, alleging age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and New York State Human Rights Law ("NYSHL"), N.Y. Exec. Law § 296 *et seq*. Three of the defendants — Alvest Holding SAS ("Alvest Holding"), Jean-Marie Fulconis, and Antoine Maguin — reside in France.[1]

      Before the Court is the French defendants' motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). For the following reasons, the motion is granted in part and denied in part.

---

[1] Fulconis was Alvest Holding's CEO from 2018 until 2021, when Maguin became CEO. (ECF No. 52-3 at 14.)

## BACKGROUND

### I.     Formation and Acquisition of Sage Parts

The plaintiff is a 69-year-old executive who has worked in the aviation industry for four decades.  (ECF No. 32 ¶¶ 1, 14.)  Between 1997 and 1998, the plaintiff and Mark Pollack co-founded Sage Parts Plus, Inc. ("Sage") — a supplier of replacement parts for aviation ground support equipment — where the plaintiff was responsible for "revenue management and generation, sales, marketing, customer service, engineering, and quality control."  (*Id.* ¶¶ 17, 23.)

In 2008, the plaintiff and Pollack sold Sage to the French company TLD Group, a wholly owned subsidiary of the French company Alvest SAS.  (*Id.* ¶¶ 26–27; ECF No. 52-1 ¶ 2, Fulconis Aff.; ECF No. 52-2 ¶ 2, Maguin Aff.; ECF No. 52-3 at 13.)  As a part of the transaction, the parties created Sage Parts Holding, Inc. ("Sage Holding") to acquire Sage.  (ECF No. 52-1 ¶ 4; ECF No. 52-2 ¶ 4; ECF No. 52-3 at 13.)  Sage Holding was then merged with the American subsidiary of TLD Group and renamed Alvest (USA), Inc. ("Alvest (USA)").  (ECF No. 52-1 ¶ 5; ECF No. 52-2 ¶ 5; ECF No. 52-3 at 13.)  Alvest (USA) is wholly owned by TLD Group.  (ECF No. 52-1 ¶ 6; ECF No. 52-2 ¶ 6; ECF No. 52-3 at 13.)

In 2021, Alvest SAS was merged into Alvest International Equity, a company that is indirectly owned by Alvest Holding.  (ECF No. 52-1 ¶ 7; ECF No. 52-2 ¶ 7; ECF No. 52-3 at 13–14.)  The current corporate structure is that Alvest Holding is the indirect owner of Sage.  (ECF No. 52-1 ¶ 9; ECF No. 52-2 ¶ 9; ECF No. 52-3 at 14.)[2]

---

[2] The defendants maintain that there is "no intermingling of funds between" Sage, Alvest (USA), TLD Group, and Alvest Holding, and that Sage "has separate offices, separate phone lines, separate bank accounts, separate operations and activities, and separate management teams."  (ECF No. 52-1 ¶¶ 15–16; ECF No. 52-2 ¶¶ 15–16; ECF No. 52-3 at 15.)

2

## II.     Post-Acquisition Employment and Termination

Following the acquisition, Pollack was named Sage's President and the plaintiff the Executive Vice President in the company's New York office.  (ECF No. 32 ¶¶ 29–30.)  The plaintiff alleges that he reported directly to Pollack, who reported to Jean-Marie Fulconis and later Antoine Maguin.  (*Id.* ¶ 29.)  According to the plaintiff, Fulconis and Maguin "repeatedly communicated with Pollack, plaintiff, and other Alvest group employees while they were working in New York" and "traveled to New York regularly to conduct . . . business."  (ECF No. 32 ¶¶ 31–32.)

The French defendants assert that Alvest (USA) was entitled as Sage's owner to a seat on Sage's Board of Directors.  (ECF No. 52-1 ¶ 11; ECF No. 52-2 ¶ 11; ECF No. 52-3 at 14.)  Accordingly, and on Alvest (USA)'s behalf, Fulconis was the Chairman of Sage's Board from 2008 until 2021, when Maguin took over.  (ECF No. 52-1 ¶¶ 11–12; ECF No. 52-2 ¶¶ 11–12; ECF No. 52-3 at 14.)[3]  Neither Fulconis nor Maguin held any other positions at or received any compensation from Sage.  (ECF No. 52-1 ¶¶ 11–12; ECF No. 52-2 ¶¶ 11–12; ECF No. 52-3 at 14.)

The plaintiff alleges that beginning in the "mid-2010s," "Alvest" leadership stated its intention to "transition" managers of the "Alvest group of companies," including Sage, to the "next generation."  (ECF No. 32 ¶¶ 40–43.)[4]  In 2017, the defendants, including Fulconis and Maguin, "started to push [the plaintiff] to retire," including by excluding him from an equity

---

[3] From June 2008 to September 2018, David Flahault, then Alvest Holding's CFO, was a member of Sage's board; his successor, Laurent Jamet, took over his position on Sage's board.  (ECF No. 52-3 at 14–15.)  Neither Flahaut or Jamet held any other positions or received any compensation from Sage.  (*Id.*)

[4] Throughout the amended complaint, the plaintiff refers generally to "Alvest," the "Company," or the "Corporate Defendants" as referring to a combination of Alvest Holding, Alvest (USA), Sage, and other companies owned by Alvest Holding.  (ECF No. 32 at 1.)

3

investment opportunity and "marginalizing . . . and devaluing his work." (*Id.* ¶¶ 51, 56.) Fulconis also informed the plaintiff during an in-person meeting in New York that his next contract with Sage would be for only one year, and that his salary would be reduced from $340,000 to $200,000. (*Id.* ¶¶ 57–60.)[5] Fulconis said that he wanted to replace the plaintiff with a "guy of the future" who was "20 years younger" and could lead Sage moving forward. (*Id.* ¶ 59.) The plaintiff rejected Fulconis's offer and negotiated a new two-year agreement that paid him a $220,000 salary. (*Id.* ¶¶ 61–64.)

In 2018 and 2019, the plaintiff's sales, customer service, engineering, product management, and product control responsibilities were reassigned to younger employees. (*Id.* ¶¶ 69, 71.) The plaintiff asked Pollack why his responsibilities were being reduced; Pollack replied that "Fulconis made the decision." (*Id.* ¶ 72.)

In 2020, Pollack informed the plaintiff that his employment agreement would be extended for only one year, and that his scheduled hours would be reduced by 50% beginning in 2021. (*Id.* ¶¶ 74–75.) In addition, the plaintiff's salary would be reduced commensurate with the reduction in his hours. (*Id.* ¶ 76.) The plaintiff alleges that "Alvest," Fulconis, and Maguin made these decisions and instructed Pollack to deliver the news. (*Id.* ¶¶ 74–76.)

On July 20, 2021, Pollack told the plaintiff that he was being fired, effective September 30, 2021. (*Id.* ¶ 84.)[6] On September 3, 2021, the plaintiff met with Maguin in New York to discuss the reasons for the termination, as well as future non-competition obligations. (*Id.* ¶ 86.)

---

[5] Since the acquisition, the plaintiff's employment agreements were for two-year terms. (*Id.* ¶ 60.)

[6] The plaintiff's termination date was extended to October 8, 2021, so that he could participate at an industry trade show. (*Id.* ¶ 85.)

4

Maguin explained that the company was trying to "build a team for the future" and said that the plaintiff "knew this was going to happen." (*Id.* ¶¶ 86–87.)[7]

The plaintiff commenced this action on July 5, 2023, naming Alvest SAS, Alvest (USA), and Sage as defendants. (ECF No. 1.)[8] On December 14, 2023, the plaintiff filed an amended complaint, replacing Alvest SAS with Alvest Holding, and adding Fulconis and Maguin as defendants. (ECF No. 32.) The plaintiff alleges age discrimination and retaliation under federal and state law. (*Id.* ¶¶ 104–28.)

## LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing jurisdiction. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). A plaintiff "must establish the court's jurisdiction with respect to each claim asserted." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 83 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis omitted)).

"Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *In re Magnetic Audiotape*, 334 F.3d at 206; *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) ("[U]ntil discovery takes place, a plaintiff is required only to make a *prima facie* showing by pleadings and affidavits that jurisdiction exists."); *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) ("[A]

---

[7] Fulconis and Maguin assert that they did not "play a role" in the plaintiff's termination, and that their interactions with the plaintiff were "done in connection with their duties as a Sage . . . board member." They maintain that although Pollack reported to them about Sage financial, strategic, and personnel matters, their communications with Pollack — including communications about the plaintiff — were made in their capacity as Sage's board members. (ECF No. 52-1 ¶¶ 17–20; ECF No. 52-2 ¶¶ 17–20; ECF No. 52-3 at 16.)

[8] On April 26, 2022, following his termination, the plaintiff filed a complaint alleging age discrimination with the Equal Employment Opportunity Commission. (ECF No. 32 ¶¶ 13, 100.) On April 6, 2023, the EEOC notified the plaintiff of his right to sue under the ADEA. (*Id.* ¶ 13.)

5

complaint will survive a motion to dismiss for want of personal jurisdiction so long as its allegations, taken as true, are legally sufficient allegations of jurisdiction.") (citations and quotation marks omitted). "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). The Court "constru[es] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[es] all doubts in the plaintiff's favor." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).

Determining whether there is personal jurisdiction over a foreign defendant involves a two-step inquiry. *Yih v. Taiwan Semiconductor Mfg. Co.*, 815 F. App'x 571, 573 (2d Cir. 2020). "First, courts look to the law of the forum state to determine whether jurisdiction exists." *Id.* If the forum state's jurisdictional requirements are met, "the court must then 'consider whether the district court's exercise of personal jurisdiction over a foreign defendant comports with the due process protections established under the United States Constitution.'" *Id.* (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)). In this case, New York's long-arm statute and the Due Process Clause of the Fourteenth Amendment govern the analysis.

## DISCUSSION

### I. New York's Long-Arm Statute

"Under New York law, there are two bases for personal jurisdiction over out-of-state defendants: (1) general jurisdiction pursuant to N.Y. C.P.L.R. § 301, and (2) long-arm jurisdiction pursuant to N.Y. C.P.L.R. § 302." *Gordon v. Chambers*, No. 20-CV-696, 2021 WL 9183819, at *2 (E.D.N.Y. Jan. 29, 2021) (quoting *Allied Dynamics Corp. v. Kennametal, Inc.*, 965 F. Supp. 2d 276, 289 (E.D.N.Y. 2013)). The plaintiff does not argue the Court has general jurisdiction over the French defendants. (ECF No. 32 ¶¶ 11–12; ECF No. 54 at 30.) Rather, he

6

contends that the French defendants are subject to New York's long-arm statute under Sections 302(a)(1) and 302(a)(2). (ECF No. 32 ¶ 12.)

      a.     **N.Y. C.P.L.R. § 302(a)(1)**

Section 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary" who "transacts any business within the state or contracts anywhere to supply goods or services in the state." N.Y. C.P.L.R. § 302(a)(1). To establish jurisdiction under Section 302(a)(1), "two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006). Even if a defendant does not enter New York, "proof of one transaction in New York is sufficient to invoke jurisdiction . . . so long as the defendant's activities . . . were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988)). "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (quotation marks omitted) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). As explained below, the plaintiff has established jurisdiction over Fulconis and Maguin under Section 302(a)(1), but not Alvest Holding.

          i.     *Fulconis and Maguin*

The French defendants argue that "there was a formal separation between the management of Alvest Holding and Sage . . . and that the involvement of Mr. Fulconis and Mr. Maguin, as well as Alvest Holding's Chief Financial Officers, was purely in their respective capacities as Chairman or members of Sage." (ECF No. 52-3 at 25.) In addition, the French

7

defendants assert that Fulconis and Maguin merely "switched hats" and "functioned as Chairman and board members of Sage . . . not officers or employees of Alvest Holding when they interacted with Pollack and [the plaintiff]." (*Id.* at 26.)

The plaintiff responds that Fulconis and Maguin transacted business in New York because they were "members of Sage's Board . . . travelled frequently to New York to conduct business . . . made decisions about [the plaintiff's] employment," and consistently communicated with Pollack and the plaintiff "via email, phone, and other means." (ECF No. 54 at 23–24.) The plaintiff asserts that his claims arise from these contacts, in particular the 2017 meeting at which Fulconis told the plaintiff he wanted to replace him with someone "20 years younger" and the 2021 meeting at which Maguin discussed the plaintiff's termination and explained that he was trying to "build a team for the future." (ECF No 32 ¶¶ 59, 86–87; ECF No. 54 at 23.)

"[T]he quality of the defendant['s] New York contacts . . . is the primary consideration" in determining whether a defendant has transacted business within New York. *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (2007). In employment cases, court have found that out-of-state defendants transact business in New York when they repeatedly execute managerial responsibilities in New York or in communication with employees in New York. *See Henao v. Parts Auth., LLC*, 557 F. Supp. 3d 490, 498 (S.D.N.Y. 2021) ("[The defendant's] conduct in negotiating terms governing [the plaintiff's] employment, role in setting the conditions of [the plaintiff's] employment and approval of fees charged to employees" establish jurisdiction under Section 302(a)(1)); *Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 359 (S.D.N.Y. 2007) (finding that "work assignments that Plaintiff claims constituted instances of illegal disparate treatment were communicated and assigned to Plaintiff by these individuals via telephone, email, and fax to her home office in New York" was "sufficient to

8

demonstrate purposeful transaction of business . . . within the meaning of section 302(a)(1)"); *see also Payne v. McGettigan's Mgmt. Servs. LLC*, No. 19-CV-1517, 2020 WL 2731996, at *3 (S.D.N.Y. May 26, 2020) (finding that an out-of-state officer's "routine[] visit[s] and manage[ment]" of a the New York company "constitutes transaction of business in New York state"). Further, in New York, "if a corporation has sufficient in-state contacts to fall subject to personal jurisdiction, then a corporate officer who has 'played a part in the [corporate] activities that gave rise to the action' is likewise subject to jurisdiction." *Ramiro Aviles v. S & P Glob., Inc.*, 380 F. Supp. 3d 221, 261 (S.D.N.Y. 2019) (alteration in original) (quoting *Arch Specialty Ins. Co. v. Entm't Specialty Ins. Servs., Inc.*, No. 04-CV-1852, 2005 WL 696897, at *4 (S.D.N.Y. Mar. 24, 2005)); *see also Kreutter*, 71 N.Y.2d at 467 ("[A plaintiff[ need only convince the court that [a company subject to New York's jurisdiction] engaged in purposeful activities in this State in relation to his transaction for the benefit of and with the knowledge and consent of the [company's officers] and that they exercised some control over [the company] in the matter.")

Fulconis and Maguin transacted business in New York by serving on Sage's board, travelling to New York for Sage business, and communicating with Pollack about Sage's management, among other activities. (ECF No. 32 ¶¶ 18–19, 29, 32.) Indeed, in their capacity as Sage directors, Fulconis and Maguin concede that they "discussed a variety of topics" with Pollack, which included "high-level employee performance and compensation, high-level employee hiring and firing decisions, and high-level employee succession planning." (ECF No. 52-1 ¶ 18; ECF No. 52-2 ¶ 18.) The plaintiff's claims arise from these transactions. Not only did Fulconis and Maguin confer with Pollack about the plaintiff's employment — including his termination — both expressed their desire, during New York meetings, to install younger people in Sage management positions. (ECF No. 32 ¶¶ 57–62, 75, 83–84, 86–88.) Even if they were

9

acting solely in their capacity as Sage directors, the plaintiff's allegations satisfy the requirements of Section 302(a)(1).

> ii. *Alvest Holding*

The French defendants argue that Alvest Holding is not subject to jurisdiction under the *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, which established a four-factor test to determine whether "jurisdiction [over a foreign parent company] has been created by the activities [of its] subsidiary." 751 F.2d 117, 122 (2d Cir. 1984). *Beech Aircraft*, however, "focuses on the scope of general jurisdiction pursuant to section 301, not the propriety of specific jurisdiction pursuant to section 302(a)(1)." *Ingenito v. Riri USA, Inc.*, 89 F. Supp. 3d 462, 478 n.10 (E.D.N.Y. 2015); *see also Jensen v. Cablevision Sys. Corp.*, No. 17-CV-100, 2017 WL 4325829, at *8 (E.D.N.Y. Sept. 27, 2017) ("Defendants' argument focuses on the scope of general jurisdiction [citing *Beech Aircraft*], not the applicability of specific jurisdiction under § 302(a)(1)."); *Liverpool v. Con-Way, Inc.*, No. 08-CV-4076, 2009 WL 1362965, at *6 (E.D.N.Y. May 15, 2009) ("*Beech Aircraft* . . . do[es] not involve interpretations of § 302 . . . [it] discuss[es] whether jurisdiction lies under § 301."); *but see Manning v. Erhardt + Leimer, Inc.*, No. 17-CV-348, 2020 WL 759656, at *4 (W.D.N.Y. Feb. 7, 2020) (treating the *Beech Aircraft* test as a threshold inquiry for exercising personal jurisdiction over a foreign parent corporation before evaluating N.Y. C.P.L.R. § 302). Because the plaintiff does not argue that general jurisdiction exists, the French defendants' reliance on *Beech Aircraft* and its progeny is misplaced.

According to the plaintiff, Alvest Holding transacted business in New York in two ways. First, the plaintiff asserts that Alvest Holding and Sage constitute a single employer because Alvest Holding "exercised control over Sage's operations and employees." (ECF No. 54 at 15–17.) Second, and alternatively, the plaintiff argues that Alvest Holding transacted business in

New York through its agents, Fulconis, and Maguin. (*Id.* at 17–22.) Under either theory, the plaintiff says, Alvest Holding is responsible for his termination through its subsidiaries and employees. (*Id.* at 24–25.)

To determine whether "a parent and subsidiary constitute a single employer," courts weigh four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 155–56 (2d Cir. 2014) (citation and quotation marks omitted). The second factor — control — "is the most significant," *id.* (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir.1995)), and can be shown through either "formal control" or "functional control." *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 205 (S.D.N.Y. 2014). Formal control exists if an employer "(1) ha[s] the power to hire and fire the employees, (2) supervise[s] and control[s] employee work schedules or conditions of employment, (3) determine[s] the rate and method of payment, and (4) maintain[s] employment records." *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir.1984)). Functional control exists if the relationship between the parent and subsidiary lacks a "substantial, independent economic purpose," and is based on the totality of the circumstances. *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003).[9]

As an initial matter, it is not clearly established that a single employer theory can be used to establish jurisdiction or whether it is merely a theory of liability. *Zurich Am. Life Ins. Co. v.*

---

[9] Relevant factors include, but are not limited to: "(1) whether [the alleged employers'] premises and equipment were used for the plaintiffs' work; (2) whether the [subcontractors] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the alleged employers'] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which [the alleged employers] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the alleged employers]." *Olvera*, 73 F. Supp. 3d at 205–06 (alteration in original) (quoting *Zheng*, 355 F.3d at 72).

11

*Nagel*, 571 F. Supp. 3d 168, 177 (S.D.N.Y. 2021).  The plaintiff cites cases in which courts exercised personal jurisdiction over a foreign parent corporation based on that theory, *e.g.*, *Xiaoyan Liu v. Canteen 82 Inc.*, No. 17-CV-7862, 2018 WL 6067228, at *5 (S.D.N.Y. Nov. 20, 2018) ("[J]oint employment may serve as a basis for personal jurisdiction in New York."), but some of those cases cite general jurisdiction authority, *see Williams v. PMA Cos., Inc.*, 419 F. Supp. 3d 471, 487 (N.D.N.Y. 2019) (finding that a parent "and its subsidiaries constitute a single employer for jurisdictional purposes only," but relying on *Beech Aircraft* and related general jurisdiction cases); *Manning*, 2020 WL 759656, at *4–6 (relying on *Beech Aircraft* in discussing personal jurisdiction).  However, courts have also found that a single employer theory "is one of liability and not jurisdiction."  *Henao v. Parts Auth., LLC*, 557 F. Supp. 3d 490, 496 (S.D.N.Y. 2021); *Tese-Milner v. De Beers Centenary A.G.*, 613 F. Supp. 2d 404, 414 (S.D.N.Y. 2009) ("[T]he Court has not encountered, and Plaintiff does not offer, any legal support for the contention that 'integrated enterprise' has any legal meaning for the purposes of the relevant personal jurisdiction law."); *see also Kreutter*, 71 N.Y.2d at 470 ("Liability may be considered only after it is decided, on the basis of CPLR 302, that the defendant is subject to the in personam jurisdiction of our courts.").

In any event, the plaintiff does not allege the requisite control — whether formal or functional — to establish that Alvest Holding and Sage are a single employer.  The plaintiff claims, in general terms, that Alvest Holding was responsible for the "hiring and firing decisions . . . including [] directing Pollack to hire and fire employees" and "discriminatory employment actions against [the plaintiff], including reducing his compensation and responsibilities."  (ECF No. 54 at 17.)  But nothing in the complaint ties Alvest Holding specifically to the conduct about which the plaintiff complains.  Rather, the plaintiff refers generally to "Alvest" the "Company"

12

or the "Corporate Defendants" without distinguishing between Alvest Holding, Alvest (USA), and Sage.  (ECF No. 32 at 1; *see also*, *e.g.*, *id.* ¶¶ 18–19, 47, 59, 69–70, 74–76, 80–81, 84.)

Fulconis and Maguin, on the other hand, assert in their affidavits assert that the actions they took were strictly in their capacities as Sage directors (ECF No. 52-1 ¶¶ 19–20; ECF No. 52-2 ¶¶ 19–20); it is well-established that "that directors and officers holding positions with a parent and its subsidiary can and do change hats to represent the two corporations separately, despite their common ownership." *Dobrosmylov v. DeSales Media Grp., Inc.*, 532 F. Supp. 3d 54, 63 (E.D.N.Y. 2021) (citations and internal quotation marks omitted).  Moreover, while Alvest Holding may be an indirect owner of Sage, the French defendants maintain that each entity has "has separate offices, separate phone lines, separate bank accounts, separate operations and activities, and separate management teams."  (ECF No. 52-1 ¶¶ 15–16; ECF No. 52-2 ¶¶ 15–16; ECF No. 52-3 at 15.)  The plaintiff has not established a single employer relationship between Alvest Holding and Sage.

The plaintiff's agency theory fares no better.  "[T]here is jurisdiction over a principal based on the acts of an agent where 'the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 85 (2d Cir. 2018) (quoting *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981)).  While "a plaintiff need only show a limited amount of control," *Protostorm, llc v. Antonelli*, No. 08-CV-931, 2010 WL 4052922, at *5 (E.D.N.Y. Oct. 14, 2010), "sparse allegations of agency" that "shed[] no light on the relationship between" the parent and agent are insufficient. *See Charles Schwab Corp.*, 883 F.3d at 86.

As explained above, the plaintiff has not sufficiently alleged that Alvest Holding controlled the actions of Sage, Fulconis, or Maguin to establish that they were agents of Alvest

13

Holding as opposed to one of the other entities. Merely conflating Alvest Holding, Alvest (USA), and Sage, as the plaintiff does, is not enough overcome the French defendants' sworn statements that there is "strict separation" between Sage and Alvest Holding, that there is "no intermingling of management teams" between the two, and that Fulconis's and Maguin's "interaction[s] with [the plaintiff] with respect to his employment at Sage [were] done in connection with [their] duties as Chairman of Sage['s board]." (ECF No. 52-1 ¶¶ 15, 17, 19; ECF No. 52-2 ¶¶ 15, 17, 19); *MacDermid, Inc.*, 702 F.3d at 727 ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.").

      b.     N.Y. C.P.L.R. § 302(a)(2)

Under Section 302(a)(2), any out-of-state defendant who "commits a tortious act within the state" is subject to New York's jurisdiction. N.Y. C.P.L.R. § 302(a)(2). "New York courts . . . have held that to qualify for jurisdiction under this subsection, a defendant's act or omission [must have] occur[red] within the State." *Arzu v. Am. Airlines, Inc.*, 690 F. Supp. 3d 242, 250 (S.D.N.Y. 2023) (alteration in original) (citation omitted)); *see also Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, No. 01-CV-1574, 2002 WL 719471, at *3 (E.D.N.Y. Mar. 1, 2002) ("[T]o establish jurisdiction under this section, a person must be physically present within the state when the tortious act is committed."). "New York courts and the Second Circuit have consistently interpreted § 302(a)(2) jurisdiction narrowly." *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 299 (S.D.N.Y. 2020) (citations and international quotations omitted). As with Section 302(a)(1) jurisdiction, a defendant can be found to have committed tortious actions in New York through an agent. *See Edwardo v. Roman Cath. Bishop of Providence*, 66 F.4th 69, 74 (2d Cir. 2023).

The plaintiff alleges that Fulconis and Maguin, through their in-person meetings with the plaintiff in 2017 and 2021, committed discriminatory acts in New York. (ECF No 32 ¶¶ 59, 86–87; ECF No. 54 at 23.) These actions are sufficient to establish jurisdiction under Section 302(a)(2). *Prejean v. Infosys Ltd.*, No. 20-CV-8018, 2022 WL 4620154, at *4 (S.D.N.Y. Sept. 30, 2022) ("[The plaintiff] alleged that [the defendant] conducted tortious conduct while present in New York — e.g., his alleged expressions of animus and threats to her job — satisfying jurisdiction under § 302(a)(2)."); *Launer v. Buena Vista Winery, Inc.*, 916 F. Supp. 204, 210 (E.D.N.Y. 1996) ("The phrase "tortious acts" encompasses more than simply torts . . . discrimination can be a tortious act."); *see also Sung Hwan Co. v. Rite Aid Corp.*, 7 N.Y.3d 78, 85 (2006) ("For purposes of establishing long-arm jurisdiction, a tort should be broadly defined to encompass one that causes economic injury.").

As explained above, the plaintiff's allegations are insufficient to establish an agency relationship between Alvest Holding and Fulconis or Maguin. Accordingly, the Court does not have personal jurisdiction over Alvest Holding.

**II.     Due Process**

"Due process considerations require that the defendant 'have certain minimum contacts [with the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Licci ex rel. Licci*, 732 F.3d at 169 (alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A court determining whether there are minimum contacts must consider "totality of the circumstances" and determine "whether the defendant has purposefully avail[ed] itself of the privilege of conducting activities within the forum State . . . such that [the defendant] should reasonably anticipate being haled into court there." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242–43 (2d Cir. 2007) (alteration in original) (internal citations and quotations marks omitted). Once the minimum contacts test is

15

satisfied, the court decides "whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Licci ex rel. Licci*, 732 F.3d at 170 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).  To make that determination, the court weighs "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996).

      The Second Circuit has observed that "[i]t would be unusual . . . if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1)" but federal due process requirements were not met.  *Licci ex rel. Licci*, 732 F.3d at 170; *Jensen*, 2017 WL 4325829, at *9 ("[I]t is especially unusual to find that a defendant has met the requirements of § 302(a)(1), yet failed a due process analysis.  The Court is unaware of any such decisions in the Second Circuit.").  In this case, Fulconis's and Maguin's actions satisfy the minimum contacts test; they traveled to New York for business, met with the plaintiff in New York, and corresponded with Pollack about Sage's business, among other activities.  *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 272 (E.D.N.Y. 2014) (finding minimum contacts satisfied where the "defendants travelled to New York and negotiated a contract in New York that required an ongoing business relationship with an individual and business in New York").  Moreover, nothing in the record suggests that exercising jurisdiction over either defendant would be unfair; the plaintiff and Sage reside in New York, the underlying conduct took place in New York, and the plaintiff brings claims under New York law.  *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 218 (2000) (finding due process

16

satisfied where "New York ha[d] an interest in providing a convenient forum for [the plaintiff], a New York resident who was injured in New York and may be entitled to relief under New York law"). This Court is best suited to adjudicate these issues, and Fulconis and Maguin do not "present[] a 'compelling case' that some other consideration would render jurisdiction unreasonable." *WCVAWCK-Doe v. Boys & Girls Club of Greenwich, Inc.*, 216 A.D.3d 1, 14 (2d Dep't 2023) (quoting *Burger King Corp.*, 471 U.S. at 477).[10]

## CONCLUSION

For these reasons, the defendants' motion to dismiss is granted with respect to Alvest Holding and denied as to Fulconis and Maguin.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 21, 2025

---

[10] The plaintiff does not request jurisdictional discovery (ECF No. 54 at 8 n.7), and the Court declines to order it. "District courts enjoy broad discretion in deciding whether and to what extent to permit jurisdictional discovery." *Parker v. Bursor*, No. 24-CV-245, 2024 WL 4850815, at *3 (S.D.N.Y. Nov. 21, 2024); *see also Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 206 (2d Cir. 2016) ("[A] district court has wide latitude to determine the scope of discovery." (citations and internal quotations omitted)). If a plaintiff does not request jurisdictional discovery, the Court has the discretion to deny it. *Jacubovich v. State of Israel*, 816 F. App'x 505, 510 (2d Cir. 2020) (upholding denial of jurisdictional discovery where the plaintiffs "never moved for jurisdictional discovery in the district court and did not request it in opposition to the motions to dismiss"); *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 733 (S.D.N.Y. 2010) (denying discovery where, "[i]n a footnote, Plaintiffs suggest that, although unnecessary, they may be entitled to jurisdictional discovery").